Quinton BOWEN, Petitioner-Appellant,

v.

STATE OF TENNESSEE,
Respondent-Appellee.

No. 81–5386.

United States Court of Appeals,
Sixth Circuit.

Submitted on Briefs Oct. 18, 1982.

Decided Jan. 14, 1983.

Alan Bryant Chambers (court-appointed), Wayne Chastain, Memphis Area Legal Services, Memphis, Tenn., for petitioner-appellant.

William M. Leech, Jr., Atty. Gen. of Tenn., Jennifer Helton Small, Ann Lacy Johns, Asst. Attys. Gen., Nashville, Tenn., for respondent-appellee.

Before EDWARDS, Chief Circuit Judge, LIVELY, ENGEL, KEITH, MERRITT, KENNEDY, MARTIN, JONES, CONTIE, KRUPANSKY, and WELLFORD, Circuit Judges, and CECIL *, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

Quinton Bowen (Bowen) here appeals from the denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 by the United States District Court for the Western District of Tennessee. The district court, upon motion of the respondent State of Tennessee (State), dismissed one of Bowen's claims for relief as unexhausted in the state courts and therefore beyond review in the Federal habeas proceedings. However, notwithstanding the presence of such an unexhausted allegation in the original petition, the district court adjudicated the merits of the exhausted issues and denied Bowen's petition for the writ.

On appeal, the original panel of this Court affirmed the district court's decision, including the final disposition on the merits of the exhausted claims in the petition, and denied the writ. *Bowen v. Tennessee,* No. 81–5386 (6th Cir. July 30, 1982). The panel concluded that, despite the intervening pronouncement of the Supreme Court in *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) mandating dismissal of

---

* Honorable Lester L. Cecil participated in oral argument and concurred in the Court's opinion prior to his death on November 26, 1982.

such mixed petitions, the failure of the State to enter objections to a final disposition on the merits of the exhausted issues in the trial court constituted a "waiver" of the "defense that mixed petitions must be dismissed." *Bowen v. Tennessee, supra,* slip op. at 4. The case is presently before this Court sitting *en banc.*

Preliminarily, the panel below and the instant dissents question the applicability of the total exhaustion rule to cases pending within the circuit at the time of the Supreme Court's decision in *Rose.* This Court notes that the Supreme Court has on three occasions subsequent to *Rose* applied the rule promulgated therein to pending appeals. *Bergman v. Burton,* 456 U.S. 953, 102 S.Ct. 2026, 2027, 72 L.Ed.2d 477 (1982); *Rodriquez v. Harris,* 455 U.S. 997, 102 S.Ct. 1627, 71 L.Ed.2d 858 (1982); *Duckworth v. Cowell,* 455 U.S. 996, 102 S.Ct. 1626, 71 L.Ed.2d 858 (1982).[1] Further, those courts of appeal which have been confronted with the applicability of *Rose* to pending cases have uniformly found such application to be proper. *Gulliver v. Dalsheim,* 687 F.2d 655 (2d Cir.1982); *Guthrie v. Warden,* 683 F.2d 820 (4th Cir.1982); *Slotnick v. O'Lone,* 683 F.2d 60 (3rd Cir.1982); *Stewart v. Parratt,* 682 F.2d 757 (8th Cir.1982); *Smith v. Atkins,* 678 F.2d 883 (10th Cir. 1982); *United States ex rel. Clauser v. Shadid,* 677 F.2d 591 (7th Cir.1982). Accordingly, this Court concludes that the mandate of the Supreme Court in *Rose* is fully applicable to the case at bar.

The basic issue presented by the matter *sub judice* is the essential character of the total exhaustion rule articulated in *Rose.* The original panel of this Court interpreted the rule as creating, on behalf of the state attorney general, the right to interpose a timely "affirmative defense" of failure to exhaust state remedies to any federal consideration of a mixed petition. It followed that the failure of the respondent to enter a timely assertion of this affirmative defense constituted a waiver and permitted a feder-

al court to pass upon the merits of any properly exhausted claims in the mixed petition.

The Third Circuit in *United States ex rel. Trantino v. Hatrack,* 563 F.2d 86 (3rd Cir. 1977), *cert. denied,* 435 U.S. 928, 98 S.Ct. 1499, 55 L.Ed.2d 524 (1978), considered a waiver analysis similar to that formulated by the original panel of this Court within the context of the policy of comity, underlying the exhaustion requirement of § 2254. The *Trantino* court stated:

> The basis for rejection of the concept of waiver in this case * * * is found in the policy underlying the exhaustion requirement. Exhaustion is a rule of comity. "Comity," in this context, is that measure of deference and consideration that the federal judiciary must afford to the co-equal judicial systems of the various states. Exhaustion, then, serves an interest *not* of state prosecutors but of state courts. It follows, therefore, that the state court interest which underlies the exhaustion requirement of § 2254(b) cannot be conceded or waived by state prosecutors—for the state court interest in having "an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" is simply not an interest that state prosecutors have been empowered to yield. "Waiver," like "concession," is not a talisman, the incantation of which will cause the exhaustion requirement to disappear. That requirement remains.

*Id.* at 96 (footnote omitted). *Accord, Sweet v. Cupp,* 640 F.2d 233 (9th Cir.1981); *United States ex rel. Sostre v. Festa,* 513 F.2d 1313 (2d Cir.), *cert. denied,* 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975); *Needel v. Scafati,* 412 F.2d 761 (1st Cir.), *cert. denied,* 396 U.S. 861, 90 S.Ct. 133, 24 L.Ed.2d 113 (1969).

Moreover, those courts which had formerly recognized the possibility of a waiver of the exhaustion requirement did so only upon the presence of an explicit waiver, and not, as in the instant matter, upon merely

---

**1.** *Rose* itself involved a retrospective application of the total exhaustion rule to a previously adjudicated case in this circuit.

an inadvertent or implied waiver. *Davis v. Campbell,* 608 F.2d 317 (8th Cir.1979); *Houston v. Estelle,* 569 F.2d 372 (5th Cir. 1978); *Jenkins v. Fitzberger,* 440 F.2d 1188 (4th Cir.1971). *See also United States ex rel. Lockett v. Illinois Parole and Pardon Board,* 600 F.2d 116, 118 (7th Cir.1979) ("We conclude that there is no bar to our raising the issue of exhaustion on our own, although it has not been raised by the State either in the district court or in the briefs on appeal.")

■ Wherefore, in light on the emphasis in *Rose* upon comity as protecting "the state *courts'* role in the enforcement of federal law and prevent[ing] disruption of state *judicial* proceedings", 102 S.Ct. at 1203 (emphasis added), this Court concludes that the total exhaustion rule promulgated in *Rose* may not be waived or conceded in the district court by a state attorney general and may be noticed by this Court *sua sponte* on appeal.

■ Having determined that the total exhaustion requirement may not be waived, and that the case at bar therefore presents an improper consideration of the merits of the exhausted claims contained in a mixed petition, this Court must articulate the procedure applicable to a remand of this, and all analogous, actions. In *Duckworth v. Cowell,* 455 U.S. 996, 102 S.Ct. 1626, 71

L.Ed.2d 858 (1982), and *Rodriquez v. Harris,* 455 U.S. 997, 102 S.Ct. 1627, 71 L.Ed.2d 858 (1982), the Supreme Court was similarly presented on review with cases involving mixed habeas petitions where the merits of the exhausted claims had been adjudicated at the district and circuit levels. *See, e.g., Cowell v. Duckworth,* 512 F.Supp. 371 (N.D. Ind.1981). The Court in each case granted certiorari, vacated the judgments and remanded each case to the respective court of appeals "with directions that it instruct the [district court] to dismiss the petition for a writ of habeas corpus." *Duckworth, supra,*[2] *Rodriquez, supra.*[3] It is notable that in *Duckworth,* Justice Blackmun and Justice Stevens, both of whom dissented in *Rose* at least in part for reasons related to the initial administrative burden upon courts in enforcing a total exhaustion rule, would have denied certiorari, thereby permitting the decision of the court of appeals on the merits of the exhausted claim to stand. Such a result would have authorized the circuits to read *Rose* within the context of the decision entered by the original panel of this Court. However, the unambiguous language of *Duckworth* and *Rodriquez* leaves no doubt that an appellate court is without discretion to review cases of mixed petitions and must remand such actions to the district court with instructions to dismiss.[4]

---

2. The complete text of the Court's disposition is as follows:

> The petition for writ of certiorari is granted. The judgment is vacated and the case is remanded to the United States Court of Appeals for the Seventh Circuit with directions that it instruct the United States District Court for the Northern District of Indiana to dismiss the petition for a writ of habeas corpus. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Justice Blackmun and Justice Stevens would deny the petition for a writ of certiorari.

3. The complete text of the Court's disposition is as follows:

> The motion of petitioner for leave to proceed in forma pauperis and the petition for a writ of certiorari are granted. The judgment is vacated and the case is remanded to the United States Court of Appeals for the Second Circuit with directions that it instruct the United States District Court for the Southern District of New York to dismiss the

petition for a writ of habeas corpus. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Justice Stevens would grant the petition for a writ of certiorari and set the case for oral argument.

4. It is worthy of note that in addition to the mandatory language regarding dismissal in *Rose,* and the explicit procedure of remand with instructions to dismiss adopted in *Duckworth* and *Rodriquez,* the dissenting comments of Justice Stevens, joined by Justices Brennan and Marshall, in *Bergman v. Burton,* 456 U.S. 953, 102 S.Ct. at 2027, 72 L.Ed.2d 477 (1982) support this Court's interpretation of *Rose* on the issue of remanding mixed petitions now on appeal to the district court for dismissal. After noting that the Supreme Court was remanding an appeal from a mixed petition to this Court for "further consideration" in light of *Rose,* the dissent stated:

> Under *Rose v. Lundy* —if I read the Court's opinion correctly—after the case gets back to the District Court that court *must* dismiss the

Accordingly, the petition of appellant Bowen is ORDERED remanded to the district court with instructions to dismiss the instant petition in its entirety.

GEORGE CLIFTON EDWARDS, Jr., Chief Judge, concurring in and joining the majority opinion.

If the merits of ordering dismissal of a mixed habeas petition on remand from a court of appeals were open for consideration by this Court, I would agree with the reasonableness of the two dissents. I concur, however, with the case analysis in the majority opinion which shows that the Supreme Court majority has required dismissal of such petitions.

MERRITT, Circuit Judge, dissenting.

Three considerations lead me to the conclusion that our Court has erred in its decision to apply *Rose v. Lundy* retroactively to cases pending on appeal in which the question presented was not raised in the court below: (1) Summary orders of the Supreme Court that contain no substantive discussion and set out no rule or principle of law—in this case, two two-sentence orders—do not have the precedential value of regular opinions and should not be considered binding in this case. (2) Well-settled authority on retroactivity clearly suggests that the rule of *Rose v. Lundy* should not be retroactively applied to cases pending on direct review when it was announced. (3) The question of the effect of mixing exhausted and unexhausted claims does not go to subject matter jurisdiction; it was not raised in the court below and was, therefore, waived as an issue on appeal.

## I. SUMMARY ORDERS

Although our court believes itself bound by the two two-line orders in *Duckworth* and *Rodriquez* which simply remand habeas cases with instructions to dismiss, the Supreme Court has pointed out on several occasions that "cursory consideration" of summary dispositions "does not, of course,

habeas corpus petition that is now a part of the record.

foreclose [the] opportunity to consider more fully" the question thought to be decided. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 309 n. 1, 96 S.Ct. 2562, 2565 n. 1, 49 L.Ed.2d 520 (1976); *Tully v. Griffin, Inc.,* 429 U.S. 68, 74–75, 97 S.Ct. 219, 223, 50 L.Ed.2d 227 (1976) (reaffirming the principal that summary orders should not be given full precedential weight). The members of the Supreme Court from Justice Rehnquist to Justice Brennan have expressed the view that "no one seriously contends that" summary dispositions "receive the full consideration that is given to a case argued on the merits and disposed of by written opinion," Rehnquist, *Whither the Courts,* 60 A.B.A.J. 787, 790 (1974), and "obviously they are not of the same precedential value," *Edelman v. Jordan,* 415 U.S. 651, 670–71, 94 S.Ct. 1347, 1359, 39 L.Ed.2d 662 (1974) (opinion of the Court by Rehnquist, J.). A summary disposition "is not to be read as a renunciation" of previously established doctrines or to receive full precedential treatment, *Fusari v. Steinberg,* 419 U.S. 379, 391–92, 95 S.Ct. 533, 540–541, 42 L.Ed.2d 521 (1975) (Burger, C.J., concurring). See also the dissents of Justice Brennan suggesting that summary dispositions should not receive any weight unless the issue decided is clearly expressed. *See Colorado Springs Amusements, Ltd. v. Rizzo,* 428 U.S. 913, 921–22, 96 S.Ct. 3228, 3232–3233, 49 L.Ed.2d 1222 (1976).

In the instant case all we have from the Supreme Court are two two-liners that do not refer to the retroactivity or waiver questions at all and contain no substantive discussion. It simply does not make sense to conclude that these questions have now been foreclosed by that Court when it is clear that the Court never even considered, much less decided, them. Therefore, unlike our Court, I would consider the retroactivity and waiver questions on the merits. I do not consider myself foreclosed by two two-line orders that do not purport to discuss or decide the issues. In light of our common law tradition it seems elementary that for a

102 S.Ct. at 2028, footnote omitted (emphasis added).

legal judgment to be binding as precedent—that is, to be binding on someone other than the parties—it must rest on some explicable principle of law or form of legal reasoning. When those elements are absent, a judgment cannot be a precedent in a rational system of law because there is no way to decipher its meaning.

## II. RETROACTIVITY

The *Rose v. Lundy* rule is a "clear break" with past decisions. That is clear both from the *Rose* decision itself and from the fact that this circuit and practically every other circuit followed the rule that the exhausted issues in a mixed petition should be considered.

In "clear break" civil cases federal courts should not apply a decision retroactively to pending appeals without analyzing the effect of applying the new standards on the administration of justice, *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971), a principle recently approved and followed in *United States v. Johnson,* —— U.S. ——, 102 S.Ct. 2579, 2587 n. 12, 2595, 73 L.Ed.2d 202 (1982).

In the instant case, although they feel bound to do so, practically all of the members of our court agree that it is unwise to apply *Rose* to pending cases. The reason that it is unwise is that the purpose of the Supreme Court in *Rose* is to reduce not to add to the "burden" on the federal courts. A requirement that exhausted claims already decided on the merits before *Rose v. Lundy* be dismissed and then relitigated in federal courts *de novo* a second time only adds to the burden. Retroactive application wastes judicial and litigant resources and is directly contrary to what the Supreme Court is trying to accomplish. There are unexhausted issues in many cases now pending in the federal appellate courts. In those cases the district courts have given considerable time, thought and energy to the disposition of the exhausted issues. In most the district court has denied the writ; in some it has granted the writ. To send all of those cases back to the District Court for dismissal of the exhausted issues would add

an unnecessary burden to the work of the district court. Most of the cases will have to be retried after the unexhausted issues are disposed of in the state courts. For these reasons, most if not all of the members of our court, would hold, if they believed themselves free to do so, that in pending cases on appeal containing unexhausted claims the court should not decline review of the exhausted claims on the merits by applying *Rose* retroactively. Unlike my colleagues, I believe we are free to so decide.

## III. THE WAIVER ISSUE

Here a petition for habeas corpus containing three exhausted claims and one unexhausted claim was filed. The state did not object to Judge McRae's consideration of the exhausted claims. It did not raise the point by answer to the habeas corpus petition or by motion or otherwise. The exhausted claims were decided on the merits by the District Judge prior to the Supreme Court's opinion in *Rose v. Lundy.* The issue was therefore waived.

Rule 5 of the rules governing habeas corpus cases in the District Court adopted by the Supreme Court on April 26, 1976, 28 U.S.C. § 2254, requires the defendant to set out in its answer its position respecting exhaustion of state remedies. Rule 11 of those rules makes the Federal Rules of Civil Procedure applicable. Rule 12(h), Fed.R. Civ.P., provides that the failure to raise a defense other than subject matter jurisdiction shall constitute a waiver of the defense. The defendant by failing to raise the point below has waived its claim that a mixed petition should be dismissed.

The Supreme Court's opinion in *Rose v. Lundy* appears to support this position. In footnote 5 of that opinion, the Supreme Court states that in *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), the Court properly "reviewed the merits of an exhausted claim after expressly acknowledging that the prisoner had not exhausted his state remedies for all of the claims presented" because the question was not properly "before the court." 102 S.Ct.

at 1201. It is unlikely that the Supreme Court would have so treated the issue if the Court had considered it a question of subject matter jurisdiction not subject to waiver. In addition the opinion in *Rose v. Lundy* does not discuss the rule of dismissal of mixed petitions as one of subject matter jurisdiction. The rule is based not on the premise that federal courts lack judicial power under Article III or statutory law to hear the exhausted claims contained in a mixed petition but rather it is based on a policy of conservation of judicial resources. The source of the rule of *Rose v. Lundy* is neither constitutional nor statutory. It is a federal common law rule.

The *Hatrack* case from the Third Circuit, 563 F.2d 86 (1977), relied upon by the Court, does not convince me that the *Rose* exhaustion doctrine is a doctrine of subject matter jurisdiction because it is based on "comity" in some small part. The basic reason given by the court for the *Rose* ruling is: to stop, or at least stem, the massive tide of state habeas corpus cases flowing into federal court which raise issues on a piecemeal basis. The basic reason is one of judicial economy. That is a reason and a doctrine subject to waiver when judicial economy is not served in the particular case.

The language of *Rose v. Lundy* is prospective and does not appear to require retroactive dismissal of pending appeals in which the question was not raised in the district court:

> On the contrary, our [new] interpretation of §§ 2254(b)–(c) provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court. . . .
>
> Rather than increasing the burden on federal courts, strict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their

claims in state court and to present the federal court with a single habeas petition. To the extent that the exhaustion requirement reduces piecemeal litigation, both the courts and the prisoners should benefit, for as a result the district court will be more likely to review all of the prisoner's claims in a single proceeding, thus providing for a more focused and thorough review.

102 S.Ct. at 1204.

Application of *Rose v. Lundy* retroactively in this and other pending cases will certainly not "reduce piecemeal litigation" or lessen "the burden on federal courts" or serve any of the purposes discussed by the Supreme Court, and I therefore respectfully dissent.

NATHANIEL R. JONES, Circuit Judge, dissenting.

I believe that the majority is incorrect in failing to hold that this Court can remand "mixed" petitions to the district court with directions to, if appropriate, give leave to amend the petition to remove the unexhausted claims. Thus, I must dissent.

There are four reasons that I believe remand for amendment of the petition is permissible. First, the language of *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) leaves open that option. Second, the underlying purposes motivating the *Rose v. Lundy* exhaustion requirement dictate that amendment be available. Third, the great weight of authority in the Circuits considering the issue following *Rose v. Lundy* has adopted this view. Finally, the Federal Rules of Civil Procedure support such a result.

I

Sections 2254(b) and (c) of Title 28 of the U.S.Code [1] provide that a state prisoner's

---

1. Section 2254 in part provides:

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an

absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of

application for a writ of habeas corpus will not be granted unless the petitioner has exhausted his available remedies in state court. While these sections do not specifically address the problem of mixed petitions (those containing both exhausted and unexhausted claims) the Supreme Court, in *Rose v. Lundy, supra,* considered the question.

In *Rose v. Lundy,* a prisoner sought federal habeas corpus relief from his Tennessee conviction. The district court granted the writ notwithstanding the fact that the petition contained both exhausted and unexhausted claims. This Court, rejecting the argument that total exhaustion was required, affirmed. Six members of the Supreme Court held that "a district court must dismiss such 'mixed petitions,' leaving the prisoner with the choice of returning to state courts to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." 455 U.S. at 510, 102 S.Ct. at 1199. The Court did not review the merits of the petition, but rather remanded the case to the district court for "proceedings consistent with this opinion."

Under a strict and narrow interpretation of *Rose v. Lundy,* it appears that this Court would be compelled to remand the case, already decided on the merits, for directions to dismiss the entire petition. Upon the dismissal, the petitioner will likely refile an amended petition which the district court will, because of the dismissal, have to consider *de novo.* But such a harsh result need not be reached on the facts and the language of *Rose v. Lundy,* rather this Court has the power, when the issues have already been decided and considered, to remand the case with instructions that the district court entertain a motion to amend the petition to delete the unexhausted claims. If such a motion is not offered, the district court must dismiss the entire petition.

The leave to amend while retaining jurisdiction over questions already decided is not only consistent with the holding in *Rose v. Lundy;* its availability is compelled by the rationale underlying the total exhaustion rule in district courts.

## II

There is no doubt that Justice O'Connor's and Justice Brennan's opinions make clear that when a petition *is filed* that contains exhausted and unexhausted claims, the district court should dismiss the petition without considering the merits of any of the claims. It is from *this* unreflected and mechanical dismissal that the notion of judicial economy is served. Yet, when the error has been made, and the district court has considered the unexhausted issues as well as the exhausted ones, the automatic dismissal of the entire petition upon remand from the Court of Appeals serves none of the interests forwarded as the basis for the total exhaustion rule. In short, *Rose v. Lundy* sets out a strict and straightforward requirement for *district courts* to follow upon the initial filing of the petition. To say that the Court of Appeals, in the posture of a case such as this, is bound to remand for dismissal even though the petitioner can immediately file an amended petition requiring *de novo* review of the exhausted claims, is to apply the *Rose v. Lundy* rule to the detriment of the principles that gave rise to it.

## III

At the outset, it should be noted that the Supreme Court in *Rose* did not explicitly remand for dismissal. Nor did the Court order dismissal of the petition in the later case of *Anderson v. Harless,* —— U.S. ——, 103 S.Ct. 276, 74 L.Ed.2d 3 (per curiam, 1982). In addition, the language of the *Rose* opinion deals only with what district courts must do when *receiving* petitions. What we must do when we review an already considered petition must be gleaned from the principles of *Rose.*

Justice O'Connor noted that the overall thrust of the exhaustion rule is to "protect

this section, if he has the right under the law of the State to raise, by any available proce-

dure, the question presented.

the state court's role in the enforcement of federal law and prevent disruption of state judicial proceedings." 455 U.S. at 518, 102 S.Ct. at 1203. More specifically, the *Rose* total exhaustion rule was held to foster three beneficial results. First, it "encourages state prisoners to seek full relief from the state courts." *Id.* Second, "federal claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record." *Id.* Finally, there is federal judicial economy. In *Rose,* the district court had determined that the issues were so intimately intertwined that only reviewing the unexhausted ones with the exhausted would be fruitful. Accordingly, the total exhaustion rule would obviate the need for such considerations. The federal burden will be lightened because the district court will be more likely to review all of the prisoner's claims in a single proceeding." *Id.*

While all these benefits occur at the filing stage, the considerations are altered when, as here, the proceedings below have been completed. First, it is clear that a single proceeding is now possible *only if* we allow amendment of the petition before dismissal. If the petitioner amends his petition, and succeeds, a single proceeding will result. If, however, we direct dismissal of the petition without leave to amend, there will most likely be a refiling either immediately, or upon exhaustion in the state courts. In either event, a second proceeding will be needed.

Second, requiring dismissal of the petition, in all cases, at this stage, would not promote the goal of forcing petitioners to exhaust state remedies. Those who have yet to file a petition will still face the *Rose* total exhaustion rule at the district court. Those who have filed and have been heard, even though their petition contained exhausted claims, may simply refile the petition causing duplication of the district court's considerations. Any added deterrence to petitioners is far outweighed by the need for judicial economy. Those cases already in the habeas pipeline should be handled in a manner so as to minimize duplication.

Finally, there is no additional disrespect to the state system by allowing amendment prior to dismissal. Whether the amendment, in this context, is prior to dismissal or after, leaves the state court in the same position.

## IV

My reading of *Rose v. Lundy* is consistent with and supported by other Circuits that have addressed the issue. Most recently, the Second Circuit adopted the position. *Gulliver v. Dalsheim,* 687 F.2d 655 (2d Cir. 1982). There, the Court wrote, "On remand, the district court should determine whether Gulliver has amended his petition to delete his unexhausted claims and, if he has not, the courts should give him an opportunity to do so." *Id.* Moreover, the Court noted that after allowing amendment, the district court could then reinstate its opinion on the exhausted claims, which would be ripe for review.

The Eighth Circuit adopted this position as well in *Stewart v. Parratt,* 682 F.2d 757 (9th Cir.1982). There, the Court remanded the case to the district court to allow amendment, stating: "If the petitioner does choose to amend his petition to delete the unexhausted claim, then, as requested by the state, we will allow this case to proceed upon appeal on the present record and briefs." *Id.* at 758.

The Fourth Circuit hinted that judicial economy should be a factor in assessing whether to apply the total exhaustion rule in the appellate context in *Guthrie v. Warden,* 683 F.2d 820 (4th Cir.1982). The Court held that when unexhausted claims had been abandoned early on in the habeas proceedings, *Rose* did not require dismissal. It stated:

> Thus, we find nothing in *Rose* to indicate that an appellate court must direct dismissal of a mixed petition where the petitioner abandoned all unexhausted claims early in the case and the district court considered only an exhausted claim and ruled on the matter before *Rose* was decided. Indeed, a contrary view would

undermine the *Rose* court's concern for efficient judicial administration. Dismissal here would, without a doubt, lead the petitioner to file an amended petition—as he has an unquestioned right to do. The district court would thus be required to adjudicate this case a second time. Since there is no reason to believe that the district court would change its opinion of the case, we would expect to face a second appeal months hence. The policies which prevailed in *Rose* do not call for such a burdensome exercise in paper shuffling.

*Id.* at 821 n. 1.

In short, I agree with the Second, Fourth and Eighth Circuits that the principles underlying *Rose v. Lundy's* total exhaustion rule allow that, in the appellate context when claims have already been considered and a record produced in the district court, we may direct the district courts on remand to entertain a motion for and grant leave to amend the petition should the petitioner so choose.

### V

The view that leave to amend can be granted finds additional support in the plain language of the Federal Rules of Civil Procedure. Rule 15 permits a party to amend its pleading, after a responsive pleading has been filed, by leave of the court or written permission of the adverse party.

It specifically provides that leave shall be granted when justice so requires. Rule 15(a) Federal R.Civ.Pro. This rule places considerable discretion in the District Court to determine whether to dismiss the petition outright or to permit amendment. *See Austin v. Warner,* 483 F.2d 70, 71 (9th Cir. 1973) (Rule 15 should be liberally applied to allow amendment, but the district court did not abuse its discretion in that case).

There is nothing in *Rose v. Lundy* which derogates the Rule 15(a) principles. In fact, the Court specifically remanded the case for proceedings not inconsistent with the opinion. When a habeas case is so remanded, there would seem to be no reason why a limited right to amend the pleadings, as Rule 15(a) provides, does not remain as it would in other litigation.

This is not to say that leave to amend *must* be granted, rather, the district court must assess whether justice and the concerns for judicial economy and federalism (elements of the *Rose* rationale) dictate that amendment be allowed. The court may determine that to grant amendment would ensure piecemeal litigation of the petitioners' claims, or that the issues are so intertwined that the exhausted and unexhausted claims must be adjudicated in a single proceeding. In that case, the district court would deny leave to amend. Yet when the *Rose v. Lundy* concerns are furthered by giving leave to amend, the district court should have the freedom to grant it upon motion.

The fact that the importance of the unexhausted claims which form the basis for the remand will vary from case to case dictates that there should be considerable discretion in the district court if *Rose v. Lundy* is to foster judicial economy. Some unexhausted claims may be strictly frivolous or pure afterthoughts by the petitioner or thrown in at the suggestion of a jailhouse lawyer. Others may have more substance to them.

If the claims yet to be exhausted are meritless, the court may wish to inform the petitioner that he has the right to amend, while at the same time advising him that he may run the risk that the claims may be waived (as suggested in Part III–C of Justice O'Connor's opinion in *Rose v. Lundy*). In this way, the court can preserve the proceedings it has already conducted, rather than require a de novo consideration merely on the basis of the joinder of a frivolous claim that the petitioner is willing to abandon.

### VI

I find unpersuasive the reasons that compel the majority to accept the impractical.

The majority puts great weight upon the summary dismissals in *Duckworth* and *Rodriguez* which remanded the cases to order dismissal of the petition. Yet, they should not be read to *require* dismissal.

First, in both cases in which it issued *opinions,* the Supreme Court did not remand for dismissal, but rather for additional proceedings not inconsistent with the opinion. Second, the majority is incorrect in reading *Gulliver v. Dalsheim,* 687 F.2d 655 (2d Cir.1982); *Guthrie v. Warden,* 683 F.2d 820 (4th Cir.1982), and *Stewart v. Parratt,* 682 F.2d 757 (8th Cir.1982) as requiring dismissal of the petition in the appellate context. Rather, the facts of each of those cases specifically show that the courts did not direct the dismissal of the petition, but allowed amendment to exclude the unexhausted claim, *Gulliver* and *Stewart,* or recognized that the unexhausted claim had been "abandoned" early on in the proceedings, *Guthrie.*

Third, I doubt the wisdom of reading a strict dismissal rule in the appellate context into *Rose* on the basis of two summary disposition cases. Especially so, when there is clear reasoning from *Rose* that supports the contrary view.

I would remand the case with instructions that the district court entertain a motion for leave to amend, if it is offered. If the motion is not offered, or the district court were to determine that granting leave to amend would further neither justice nor the concerns expressed in *Rose,* then the petition should be dismissed.