W.J. Michael Cody, Atty. Gen., Nashville, Tenn., Raymond Leathers (argued), for respondent-appellant.

Bob Tucker (argued), Nashville, Tenn., for petitioner-appellee.

Before ENGEL, KENNEDY and MILBURN, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Respondent-Appellant appeals from the District Court's partial grant of petitioner-appellee's petition for a writ of habeas corpus. The underlying legal issue is whether the imposition of a higher sentence at appellee's retrial was a product of vindictiveness toward appellee for asserting his right to appeal, and hence whether that harsher sentence violated the due process clause of the fourteenth amendment. The District Court found that the second jury's imposition of a seventy-five-year sentence, when at least some of those jurors knew that the first jury imposed a sixty-year sentence, was sufficient evidence of vindictiveness and ordered release of appellee unless the state of Tennessee completes a resentenc-

**Howard SAMPSON, Petitioner-Appellee,**

v.

**Aileene LOVE, Warden,
Respondent-Appellant.**

**No. 85–5178.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 12, 1985.

Decided Jan. 24, 1986.

Rehearing and Rehearing En Banc
Denied March 21, 1986.

ing of appellee to a term of imprisonment of sixty years or less.[1]

Appellant contends on appeal that there is insufficient evidence of vindictiveness and also argues that, in light of newly discovered evidence not considered at the state level, appellee has failed to exhaust state remedies. We decline to reach the first issue, because we agree that appellee has not fulfilled exhaustion requirements.

## I.

On February 1, 1975, appellee, Howard Sampson, shot and killed patrolman Billy Wayne Blackwell of the Lewisburg, Tennessee, Police Department. Sampson was tried by a jury and convicted, on June 19, 1975, of second degree murder of a police officer. The jury sentenced Sampson to sixty years in prison.[2] The Tennessee Supreme Court overturned Sampson's conviction in 1977, because it found that the judge had improperly instructed the jury with respect to Sampson's insanity defense. *Sampson v. State*, 553 S.W.2d 345 (Tenn. 1977). The state retried Sampson in November 1977. Sampson was convicted, and the jury sentenced him to seventy-five years. Sampson appealed on several grounds, including jury vindictiveness in sentencing. The Court of Criminal Appeals of Tennessee affirmed the conviction, and the Tennessee Supreme Court declined to review the case.

In 1984, Sampson filed a *pro se* petition for writ of habeas corpus. Appointed counsel filed an amended petition, which appellant answered. With respect to his jury vindictiveness claim, he alleged that he did not know whether the jury knew of the prior sentence but that there was a "significant possibility" that they did in view of the extensive publicity. This was the posture of the jury vindictiveness claim he presented to the state court. In September, the District Court concluded that Sampson had exhausted his available state remedies. In October, Sampson filed a memorandum in support of his petition for habeas corpus and submitted the following documents: (1) newspaper clippings from the Lewisburg Tribune and Marshall County Gazette regarding the crime and Sampson's trials; (2) *1980 Census of Population*, vol. 1, ch. B, part 44 (Tennessee) (Aug. 1982); and (3) affidavits of two jurors from the second trial regarding the jurors' actual knowledge, at the time of deliberation, of Sampson's sentence in the first trial. These documents were offered to support Sampson's claim that the seventy-five year sentence was a product of vindictiveness.[3] Two days later, plaintiff moved to further amend his petition[4] and also moved for summary judgment. On November 20, 1984, the court, having determined that an evidentiary hearing was unnecessary, granted relief on the vindictiveness claim.[5] Appellant sought recon-

1. The District Court amended this original judgment by removing the sixty-year limitation if the resentencing "is by a jury which is not aware of either of the petitioner's prior sentences, and if its sentence is not otherwise a product of vindictiveness." No. 84–0270, slip op. at 2–3 (M.D.Tenn. Jan. 15, 1985).

2. At the time of Sampson's conviction, Tennessee was one of a handful of states that allows juries to impose criminal sentences. Tennessee has since discontinued this practice. *See* The Criminal Sentencing Reform Act of 1982, Tenn. Code Ann. § 40–35–203 (1982).

3. The newspaper clippings were offered to show that the case received much publicity, supporting an inference that the second jury was aware of the first verdict and the sentence accompanying it. The census publication showed that the population of Marshall County, Tennessee, to

which Lewisburg belongs, was under 20,000 in 1980, further supporting an inference that Sampson's prior sentence was common knowledge in Marshall County.

4. The requested amendment was based on the affidavits just referred to. Sampson sought to amend his petition to include the allegation that, not only was there a significant possibility that the prospective jurors had knowledge of the jury verdict at his prior trial, some of the jurors who actually sat at the second trial did have knowledge of the prior sentence.

5. Sampson raised two other grounds for habeas relief: (1) that failure to conduct voir dire of each prospective juror separately resulted in the jurors being exposed to prejudicial statements of a fellow prospective juror; and (2) that there was insufficient evidence to support a finding of

sideration, contending that the court erred in denying appellant at least the opportunity to rebut the vindictiveness claim at an evidentiary hearing, and that, in light of Sampson's failure to proffer the above-mentioned documents to the state courts, his vindictiveness claim had not been exhausted. *See* 28 U.S.C. § 2254(b) & (c). The District Court, noting that the uncontroverted evidence showed that some members of the second jury were aware of the original sentence, held that an evidentiary hearing to determine whether the sentence was *"otherwise* a product of vindictiveness" was unwarranted. No. 84–0270, slip op. at 2 (M.D.Tenn. Jan. 15, 1985) (emphasis in original).

## II.

It is undisputed that Sampson argued to the state courts that the higher verdict in the second trial was a product of vindictiveness. Appellant contends that, nevertheless, the claim, as presented to the federal court, was significantly different and in a stronger evidentiary posture. Thus, appellant asks us to require Sampson to present his claim to the state courts pursuant to the post-conviction petition procedures set forth in Tenn.Code Ann. §§ 40–30–101 *et seq.*

The exhaustion provision of 28 U.S.C. § 2254 requires a habeas petitioner to " 'fairly present[ ]' " to the state courts the 'substance' of his federal habeas corpus claim." *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 277–78, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971)). The state courts must be provided with a "fair opportunity" to apply controlling legal principles to the facts bearing upon the petitioner's constitutional claim. *Harless*, 459 U.S. at 6, 103 S.Ct. at 277. The purpose of the exhaustion requirement is "to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982).

"This is accomplished by giving the state courts an opportunity to pass upon and correct alleged violations of the constitutional rights of state prisoners in the first instance." *Butler v. Rose*, 686 F.2d 1163, 1168 (6th Cir.1982).

The Sixth Circuit has not yet directly addressed the question whether, or when, new facts or evidence, not presented to the state courts, can affect a habeas petitioner's claim to such a degree that the new facts or evidence must first be presented to the state courts. Other circuits, however, have considered this question. In light of these other cases and the rationale behind the exhaustion requirement, we hold that the evidence presented in conjunction with Sampson's federal habeas petition places his claim in a significantly different posture and that the state court must be given an opportunity to consider the claim in that posture.

The First Circuit faced this issue in *Domaingue v. Butterworth*, 641 F.2d 8 (1st Cir.1981). That court found that petitioner's "ineffective assistance of counsel" claim depended in large measure on factual allegations outside the record on direct appeal to the state courts, *"e.g.,* allegations that trial counsel took the case over from his partner at a late date, was unfamiliar with the case and did no investigation, failed to confer with [petitioner] about trial strategy, called [petitioner] without warning and for no apparent purpose to the stand, and dismissed two defense witnesses who would have supported defenses of self-defense and insanity." *Id.* at 13. The court felt that those factual allegations necessitated further collateral proceedings in the state courts.

The Second Circuit addressed this issue in *United States ex rel. Boodie v. Herold*, 349 F.2d 372 (2d Cir.1965). Petitioner was asserting that a statement made by him while without the assistance of counsel was improperly admitted into evidence at trial. The state appellate court did not have a record of the arraignment proceedings,

sanity. The District Court rejected both of these claims, and Sampson does not appeal them.

which was now available to the federal court. The Second Circuit felt that, in light of a statement by petitioner to the court at arraignment,[6] it was necessary for the state courts to have that record when considering petitioner's claim. "The state courts have not been given any opportunity to pass upon these important [constitutional] questions in the light of all the relevant facts. The doctrine of 'exhaustion of state remedies' requires that the federal court refrain from acting until the state courts have been given that opportunity." *Id.* at 374.

The Fifth Circuit has also addressed this exhaustion issue in the context of an "ineffective assistance of counsel" claim. In *Brown v. Estelle,* 701 F.2d 494 (5th Cir. 1983), petitioner's original application for writ of habeas corpus filed in the state district court alleged that his court-appointed counsel knew or, with minimal diligence, should have known of facts that would lead a minimally competent attorney to investigate and pursue an insanity defense and the issue of petitioner's competency to stand trial. He stated in his application that while in jail awaiting trial, his "extremely bizarre and violent behavior" led to a week's commitment in a mental hospital where his mental illness was diagnosed as "schizophrenia, amblatory [sic] type with sociopathic features." He stated that after release from the hospital back to the jail, he received substantial doses of antipsychotic drugs. Petitioner claimed that his attorney was aware of his mental illness and that he specifically requested that the attorney raise the insanity defense. When petitioner filed his petition for habeas relief in federal court he moved to supplement the record with affidavits of three persons who had observed petitioner's behavior while he was incarcerated awaiting trial.

The Fifth Circuit held that "[t]hese affidavits, which had not been presented to the state courts, added some substantiation to

contentions which previously had no serious corroboration." *Id.* at 495.

The state courts must have had an opportunity to pass on the claim in light of a full record and where the factual basis for a claim was not presented to the state courts, the claim is unexhausted. Where a federal habeas petitioner presents newly discovered evidence or other evidence not before the state courts such as to place the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it, the state courts must be given an opportunity to consider the evidence. [*Knoxson v. Estelle,* 574 F.2d 1339, 1340 (5th Cir.1978) ].

*Id.* Because petitioner's claim depended "in large measure on factual allegations outside the record on his direct appeal and in his habeas proceedings in the state courts," *id.* at 495–96, the court required further state court proceedings.

The Ninth Circuit reached the same result in another "ineffective assistance of counsel" case. In *Schiers v. People of State of California,* 333 F.2d 173 (9th Cir. 1964), petitioner's claim, at the state appeals stage, was based solely on the facts appearing in the trial record. The record showed that counsel was suffering during trial from the ill effects of an accident occurring a few days prior to trial. Chief emphasis was placed on counsel's conceded "blackout" at the crucial moment when lie-detector evidence was introduced. At the federal level, plaintiff asserted several new facts:

that counsel did not go to the initial arraignment proceedings and did not inform him of his legal rights during his police detention; that counsel, before the trial court, never raised an objection based on petitioner's illegal detention; that (as discovered by petitioner after trial and appeal) counsel did not secure the introduction into evidence of certain color slides allegedly crucial to petition-

---

6. The statement was: "Excuse me, Your Honor, where's my lawyer? I haven't seen him or my

wife." *Id.* at 373.

er's defense, although counsel had falsely represented to petitioner that they had been introduced; that counsel was not even aware that they had not been received into evidence and indeed had argued to the jury that it should examine them with care.

*Id.* at 176. The Ninth Circuit held that state remedies had not been exhausted because petitioner's contention "rests upon a cumulation of many asserted delinquencies not heretofore presented to the state courts." *Id.* The holding in *Schiers* was cited with approval in dicta in *Hudson v. Rushen,* 686 F.2d 826, 830 (9th Cir.1982), *cert. denied,* 461 U.S. 916, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983). *But see Hillery v. Pulley,* 733 F.2d 644, 644 (9th Cir.1984) (dissenting opinion) (complaining that court should have rejected petitioner's federal habeas claim because it rested on: (1) the testimony of an expert presenting a new theory, which was new evidence not presented to the state court; and (2) affidavits and census material that were not merely cumulative), *cert. granted,* — U.S. ——, 105 S.Ct. 1390, 84 L.Ed.2d 780 (1985).

Finally, the Tenth Circuit has considered this exhaustion question in a case where petitioner complained of the "apparent bias or inadequacy of the trial judge." *Jones v. Hess,* 681 F.2d 688, 691 (10th Cir.1982). In *Jones,* the new evidence at the federal proceeding was three letters apparently sent by the judge to the prosecuting attorney and a handwritten note attached to a legal memorandum apparently submitted to the court but not to petitioner. The Tenth Circuit held that the allegations and proof concerning *ex parte* communications between the state trial judge and the prosecuting attorney:

transformed the claim of bias and prejudice into a significantly different and more substantial claim, one involving averment of judicial misconduct of a distinct character.... A federal claim is unexhausted where it presents "a materi-

ally different claim and stronger evidentiary case" than was before the state court. *United States ex rel. Figueroa v. McMann,* 411 F.2d 915, 916 (2d Cir.).

The state courts must have had an opportunity to pass on the claim "in light of a full record," *United States ex rel. Boodie v. Herold,* 349 F.2d 372, 373–74 (2d Cir.), and where the factual basis for a claim was not presented to the state courts, the claim is unexhausted. *Gurule v. Turner,* 461 F.2d 1083, 1084 (10th Cir.). Although "bits of evidence" which were not before the state courts will not render a claim unexhausted, [citations omitted], where a federal habeas petitioner presents newly discovered evidence or other evidence not before the state courts such as to place the case in a significantly different posture, the state courts must be given an opportunity to consider the evidence. *Needel v. Scafati,* 412 F.2d 761, 766 (1st Cir.) ("significantly different posture"), *cert. denied,* 396 U.S. 861 [90 S.Ct. 133, 24 L.Ed.2d 113] ...; *Schiers v. California,* 333 F.2d 173, 176 (9th Cir.) ("facts outside the record"); *Ex parte Farrell,* 189 F.2d 540, 545–46 (1st Cir.) (dictum), *cert. denied,* 342 U.S. 839 [72 S.Ct. 64, 96 L.Ed. 634]....

*Id.* at 693–94. Applying these cases, the Tenth Circuit held that petitioner had not exhausted his claim.

Sampson's claim certainly falls within the category of claims considered in the above-mentioned cases. Previously, Sampson could only speculate whether the jurors knew of the prior sentence. Now he has direct proof. The District Court hinged its decision on this new evidence of actual knowledge. That evidence places Sampson's claim in a significantly different posture than that at the state level.[7]

Finally, Sampson argues that exhaustion would be futile. *Cf. Ferrazza v. Mintzes,* 735 F.2d 967, 969 n. 1 (6th Cir.1984). He argues that Tennessee does not provide for

---

**7.** The exhaustion requirement adopted in this case does not conflict with procedures in the habeas statute permitting district courts to develop an evidentiary record. Our holding only affects those cases where the new evidence is significant or substantial in relation to the claim and the record below.

reconsideration of an appealed issue, even when there is new evidence. The only case cited by Sampson on this point of Tennessee law is ambiguous, at best. In *Searles v. State,* 582 S.W.2d 391 (Tenn.Crim.App. 1979), defendant sought collateral post-conviction relief after losing on direct appeal. He alleged that the prosecution suppressed exculpatory evidence when it did not reveal to defense counsel that a search warrant was based on a perjured and false affidavit. At the post-conviction hearing, defendant presented new evidence in support of his perjury claim. The Court of Criminal Appeals rejected defendant's petition, not because it felt it could not consider claims again when supported by new evidence, but rather because the search was valid even without the allegedly defective warrant—hence, the new evidence did not affect the validity of the previous holding. *Id.* at 392.

This Court has held that where the state's remedial process is open to interpretation with respect to the availability of relief via that process, the state should be given an opportunity to adopt that interpretation. *See Parker v. Rose,* 728 F.2d 392, 395 (6th Cir.1984) (requiring petitioner to seek relief a second time under Tennessee's Post-Conviction Procedure Act because, under one interpretation of the Act, petitioner may not have waived his claim). Thus, petitioner is required to present his claim to the state courts before seeking federal habeas relief.

The judgment of the District Court is reversed and the action is remanded to the District Court with directions to dismiss the petition without prejudice.